MICHAEL H. PEARSON, CA SBN 277857
 *mpearson@pwfirm.com*
**PEARSON WARSHAW, LLP**
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiff and the Putative Classes*

[Additional counsel listed on signature page]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGETTE LOWE, individually and on behalf of all others similarly situated, | CASE NO. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | **CLASS ACTION COMPLAINT** |
| EDGEWELL PERSONAL CARE COMPANY, | |
| Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiff Brigette Lowe, individually, and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Edgewell Personal Care Company ("Edgewell" or "Defendant") and alleges the following based on personal knowledge as to herself and, as to all other matters upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE CASE

1.      This is a civil class action brought by Plaintiff on behalf of consumers who purchased o.b. Organic™ tampons (the "Tampon Products") for personal hygiene purposes.

2.      Approximately 5.8 billion tampons were sold in the United States in 2018.[1] In 2020 alone, 34.1 million women in the United States used tampons to manage their menstruation.[2]

3.      In recent years there has been increased concern from women about the presence of chemicals in menstrual products and how these chemicals might affect long-term health.[3] These concerns arise, in part, from the fact that the vagina and vulva absorb chemicals at a higher rate than other areas of the body.[4] Accordingly, consumers have begun to demand eco-friendly, natural, and chemical-free methods of managing menstruation.

4.      As one of the biggest players in the very lucrative feminine hygiene market, Edgewell is keenly aware of increased consumer demand for products which limit unnecessary chemical exposure. In order to capitalize on this demand, Edgewell designs, manufactures, advertises, distributes, and sells personal care products, including the Tampon Products that are the subject of this Action.

5.      Beginning with the name "o.b. organic™," along with the "100% Organic Cotton" representation, both of which are prominently featured in large font and centered on the front of the packaging of the Tampon Products, in addition to representations that the Tampon Products are "Free from Chlorine" and contain "no Fragrances or Dyes," Defendant knowingly and intentionally leads consumers to believe that the Tampon Products are a healthy product for absorbing menstrual fluid, and that they do not contain any chemicals that are potentially harmful to women's health[5]:

---

[1] https://www.nationalgeographic.com/environment/article/how-tampons-pads-became-unsustainable-story-of-plastic (last accessed Feb. 20, 2023).

[2] https://www.statista.com/statistics/278085/us-households-usage-of-tampons/ (last accessed Feb. 15, 2023).

[3] *See* https://www.theguardian.com/commentisfree/2015/apr/20/tampon-safety-research-legislation (last accessed Feb. 20, 2023).

[4] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3948026/ (last accessed Feb. 20, 2023).

[5] https://www.ob-tampons.com/product-details/organic-regular (last accessed Feb. 21, 2023).

1

2

3

4

5

6

7

8

9

10

11



12      6.      Similarly, on the back of the packaging for the Tampon Products, "o.b. organic™" is

13 in large font at the top of the panel with the representation that the Tampon Products are "Made from

14 100% certified organic cotton – **from tip to string**," "Responsibly sourced. Free from pesticides,"

15 and "Free from Chlorine, Fragrances and Dyes." To summarize the message Edgewell intends to

16 convey to consumers, the Tampon Products include "Only what you need, nothing you don't." The

17 packaging is as follows[6]:

18

19

20

21

22

23

24

25

26

27

_____

28 [6]     https://store.truecarenow.com/products/o-b-organic-tampons-plant-based-applicator-unscented-regular-18ct (last accessed Feb. 21, 2023).

- 3 -

1
2
3
4
5
6
7
8
9
10
11
12



13    7.    Defendant has intentionally designed the front and back package label representations

14 on the Tampon Products (*see supra* ¶¶ 5–6, collectively, the "Organic" Representations), in order to

15 lead reasonable consumers to believe that the Tampon Products do not contain any potentially harmful

16 chemicals.

17    8.    Reasonable consumers, therefore, fairly and reasonably understand that a product

18 marketed with the Organic Representations would not contain chemicals known to be harmful to

19 humans or the environment.

20    9.    Edgewell knows that consumers are concerned with the ingredients in their personal

21 care products, especially products like tampons that are designed to be used internally. Thus,

22 Edgewell has intentionally utilized its marketing, centering on its Organic Representations to drive

23 sales and increase profits, including by targeting health-conscious consumers who reasonably believe

24 that the Tampon Products are free from harmful chemicals.

25    10.    However, despite Edgewell's consistent and pervasive marketing of the Tampon

26 Products as Organic, Plaintiff's independent testing has shown that the Tampon Products contain per-

27 and polyfluoroalkyl substances ("PFAS"), a category of human-made chemicals with a toxic,

28 persistent, and bioaccumulative nature which are associated with numerous health concerns.

11.     The presence of PFAS chemicals in the Tampon Products is entirely inconsistent with Edgewell's uniform Organic Representations.

12.     As a result of Edgewell's misconduct, Plaintiff and Class Members, as defined below, have suffered injury in fact in the form of economic damages.

13.     Plaintiff brings this suit to halt Edgewell's dissemination of false and misleading representations and to correct the false and misleading perceptions that Edgewell's representations have created in the minds of reasonable consumers.

14.     Plaintiff seeks damages, injunctive relief, and other equitable remedies for herself and for the proposed classes.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more proposed Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over Defendant because Defendant has intentionally availed itself of the laws of the United States and the state of California, having purposefully marketed, advertised and/or sold the Tampon Products to consumers across the United States, including the state of California. Such conduct has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including the state of California.

17.     In accordance with 28 U.S.C. § 1391 and the California Consumers Legal Remedies Act ("CLRA"), Civil Code § 1780(d), venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

**DIVISIONAL ASSIGNMENT**

18.     Plaintiff purchased the Tampon Products in Vallejo, California. Accordingly, pursuant to Civil Local Rule 3-2(d), this action can be assigned to the Oakland Division or San Francisco Division.

**PARTIES**

19.     Plaintiff Brigette Lowe is a resident and citizen of the state of Tennessee and resides in Memphis, Tennessee, and has resided there since August 2022.  Until that time, she was a resident and citizen of the state of California and resided in Vallejo, California (where she purchased the Tampon Products, *see* paragraph 93 below).

20.     Defendant Edgewell Personal Care Company is incorporated in Missouri and its principal place of business is located at 6 Research Drive, Shelton, CT 06484.

**FACTUAL ALLEGATIONS**

21.     Tampons are a method of absorbing menstrual flow that are worn internally by inserting them into the vagina.[7]

22.     The first commercial tampon was introduced in the United States in the 1930s.[8]

23.     The o.b. brand is an established tampon manufacturer and innovator, beginning "50 years ago with German gynecologist Dr. Judith Esser's personal quest for a smarter tampon. Her fruitless search led her to develop her own tampon design, one that was easy to use, comfortable, and (most importantly) provided great protection. To this day, the o.b. brand continues to retain a board-certified gynecologist and research teams to pursue Esser's vision for creating safe, effective, and innovative options for women."[9]

---

[7]  https://www.fda.gov/consumers/consumer-updates/facts-tampons-and-how-use-them-safely  (last accessed Feb. 15, 2023).

[8] https://www.theatlantic.com/health/archive/2015/06/history-of-the-tampon/394334/ (last accessed Feb. 2, 2023).

[9]     https://www.ob-tampons.com/faq/about-ob-tampons#:~:text=o.b.%C2%AE%20tampon%3F-,Who%20invented%20the%20o.b.%C2%AE%20tampon%3F,most%20importantly)%20provided%20great%20protection (last accessed Feb. 21, 2023) (emphasis added).

24.     Thus, o.b. is indisputably one of the most well recognized—and highly trusted—brands of feminine hygiene products currently on the market.[10]

25.     Edgewell acquired o.b. from Johnson & Johnson in 2014[11] to further grow its large portfolio of feminine care, becoming one of the top three manufacturers of feminine products in North America.[12]

26.     Edgewell is "one of the world's largest manufacturers and marketers of personal care products in the wet shave, sun and skin care, and feminine care categories. With operations in over 20 countries, our products are widely available in more than 50 countries."[13]

27.     In fact, Edgewell was named one of Newsweek's "America's Most Responsible Companies in 2023,"[14] further cementing its status as a trusted source for consumers.

28.     Despite their widespread use, health concerns about feminine hygiene products date back to the 1980s, when tampons were first linked to toxic shock syndrome, a potentially life-threatening condition.[15] From the time toxic shock syndrome was first linked to tampons, and continuing to the present time, Edgewell has continuously worked to reassure consumers about the safety of its products.

29.     Currently, there is significant public health concern about the chemicals used in feminine hygiene products.[16] Potential negative health effects stemming from the chemicals in

---

[10]     https://www.prnewswire.com/news-releases/-ob-launches-new-ob-organic100-certified-organic-cotton-tampons-available-with-a-plant-based-applicator-300827798.html (last accessed Dec. 30, 2022).

[11] https://ourstory.jnj.com/ob-tampons (last accessed Feb. 21, 2023).

[12]     https://ir.edgewell.com/~/media/Files/E/EdgeWell-IR/annual-reports/epc-10k-9-30-22-48.pdf (last accessed Feb. 22, 2023).

[13]Id.

[14]     https://www.prnewswire.com/news-releases/-ob-launches-new-ob-organic100-certified-organic-cotton-tampons-available-with-a-plant-based-applicator-300827798.html (last accessed Dec. 30, 2022).

[15] https://my.clevelandclinic.org/health/diseases/15437-toxic-shock-syndrome (last accessed Feb. 15, 2023).

[16] https://www.womensvoices.org/2018/06/05/new-tampon-testing-reveals-undisclosed-carcinogens-and-reproductive-toxins/ (last accessed Feb. 20, 2023).

CLASS ACTION COMPLAINT

tampons and pads, in addition to environmental concerns related to single-use plastics, have caused many women to seek out alternative menstrual hygiene products, including those that limit their exposure to unnecessary and potentially harmful chemicals and reduce plastic waste. In the past decade, in response to this consumer demand, various new brands have begun to offer menstrual products which are marketed as more ethical and ecologically friendly than traditional feminine hygiene brands.[17]

30.     As an undisputed leader in the menstrual products market, Edgewell is well aware that consumers are looking for eco-friendly and healthy ways to deal with menstruation, which is precisely why o.b. began offering the Tampon Products to consumers in 2019.[18]

31.     Edgewell's pervasive marketing of the Tampon Products with the Organic Representations is outlined in its April 9, 2019 press release, which introduced the Tampon Products to consumers with the following representations:

a.     "o.b. organic, an all new product line of responsibly sourced, 100% certified organic cotton tampons from tip to string";

b.     "For nearly 70 years, o.b. offered applicator-free tampons, which meant one less applicator toa landfill or the ocean, making the brand environmentally conscious before the ecofriendly trend";

c.     "another great choice for women who don't want to sacrifice protection for sustainability";

d.     "All o.b. organic tampons are free from chlorine, dyes, pesticides, fragrances, and BPA, giving women only what they need and nothing they don't"; and

e.     "we are excited to now offer women 100% certified organic cotton tampons."

---

[17]     https://www.theguardian.com/society/2020/feb/11/tampon-wars-the-battle-to-overthrow-the-tampax-empire (last accessed Feb. 20, 2023).

[18]     https://www.prnewswire.com/news-releases/-ob-launches-new-ob-organic100-certified-organic-cotton-tampons-available-with-a-plant-based-applicator-300827798.html (last accessed Feb. 23, 2022).

32. Edgewell currently sells o.b. tampons, including the o.b. organic™ tampons, in retail stores throughout the country, including at drug and grocery stores such as Walgreens, CVS, Target, Kroger, and Walmart.

***Defendant's False and Deceptive Advertising***

33. As discussed above, Edgewell uniformly represents the Tampon Products with the Organic Representations that confirm for the reasonable consumer that they are free from artificial ingredients, including but not limited to PFAS.

34. The Organic Representations appear prominently on the front of the Tampon Products' packaging label, which contains the word "organic" twice, once in large font in the center of the package and another time as part of the representation that that Tampon Products are "100% Organic Cotton"[19]:



35. Likewise, the back packaging label[20] contains the Organic representations, which are further bolstered by the inclusion of the phrases "Made from 100% certified organic cotton – from tip

---

[19] https://www.ob-tampons.com/product-details/organic-regular (last accessed Feb. 21, 2023).

[20] https://store.truecarenow.com/products/o-b-organic-tampons-plant-based-applicator-unscented-regular-18ct (last accessed Feb. 21, 2023).

to string," "Responsibly sourced. Free from pesticides." along with representations that the Tampon Products are made without chlorine, fragrances or dyes:



36. The packaging's side panel contains similar representations, along with the Products' ingredients, which are listed as: certified organic cotton (absorbent material, cover, string), water repellant wax (string), cotton (sewing thread) and, for the o.b. organic with applicator products, a plant-based LDPE Plastic (plastic applicator).[21] Nowhere on the Tampon Products' packaging does Edgewell disclose the presence of PFAS.

37. In fact, Edgewell uses its official website and social media channels to uniformly reassure consumers that "We're totally transparent about what goes into our o.b. organic tampons"[22] and that, on balance, the Tampon Products are "Better for the Earth, better for your body"[23]:

---

[21] *Id.*

[22] https://www.instagram.com/p/B5IZKEUBWWN/?utm_source=ig_web_copy_link (last accessed Feb. 21, 2023).

[23] https://www.instagram.com/p/B_TOFaaDqTi/?utm_source=ig_web_copy_link (last accessed Feb. 21, 2023).



38. Edgewell specifically represents the Tampon Products as safe and environmentally sustainable: "o.b. 100% Organic Cotton tampons are responsibly sourced, made from renewable resources, and free from pesticides, chlorine, and dyes. **It's only what you need, nothing you don't**."[24]

39. Because Edgewell knows that safety is material to consumers—especially when using a product that is designed to be used internally in the body—the o.b. website explicitly addresses consumer concerns about harmful chemicals in tampons, specifically chlorine, asbestos, and dioxin and even declares that "State-of-the-art testing of tampon fibers that can detect even trace amounts of

---

[24] https://www.ob-tampons.com/faq/about-ob-tampons#:~:text=o.b.%C2%AE%20tampon%3F-,Who%20invented%20the%20o.b.%C2%AE%20tampon%3F,most%20importantly)%20provided%20great%20protection (last accessed Feb. 21, 2023) (emphasis added).

1   dioxin has shown that dioxin levels are at or below the detectable limits, posing no risk to tampon

2   users' health."[25]

3       40.    Edgewell has consistently positioned the o.b. brand as a safe, trusted brand, stating

4   "We're the only feminine hygiene brand that has a unique woman gynecologist heritage and the

5   superior knowledge to continuously work on sustainable solutions. Our mission is to help women feel

6   empowered and liberated to pursue their lives with passion. They know they can trust o.b. as a

7   responsible brand that cares not only for them, but for the world in which we live."[26] Separately,

8   Edgewell explains that "To this day, the o.b.® brand continues to retain a board-certified gynecologist

9   and research teams to pursue Esser's vision for creating **safe, effective, and innovative options** for

10  women."[27]

11      41.    Thus, there can be no doubt that the Organic Representations are intentionally

12  designed to convince reasonable consumers that the Tampon Products are, in fact, "organic" and

13  otherwise free from potentially harmful ingredients.

14      42.    The Organic Representations are central to Edgewell's marketing and sale of the

15  Tampon Products and are strategically employed to convince consumers that the Tampon Products

16  are organic and otherwise safe for human use as well as the environment.

17  ***PFAS and Associated Risks***

18      43.    PFAS are a category of highly persistent and potentially harmful man-made

19  chemicals.[28]

20      44.    PFAS are not naturally occurring.[29] They are-man made and have been used in various

21  products since the 1940s.[30] Thus, they are indisputably synthetic chemicals.

22

23  [25] *Id.*

24  [26] https://edgewell.com/pages/our-brands (last accessed Feb. 15, 2023).

25  [27]    https://www.ob-tampons.com/faq/about-ob-tampons#:~:text=o.b.%C2%AE%20tampon%3F-
    ,Who%20invented%20the%20o.b.%C2%AE%20tampon%3F,most%20importantly)%20provided%
26  20great%20protection (last accessed Feb. 21, 2023) (emphasis added).

    [28] https://www.epa.gov/pfas/pfas-explained (last accessed Feb. 20, 2023).
27
    [29] https://www.atsdr.cdc.gov/pfas/resources/pfas-faqs.html (last accessed Feb. 20, 2023).
28
    [30] https://www.atsdr.cdc.gov/pfas/health-effects/index.html(last accessed Feb. 20, 2023).

45.     To date, scientists have identified at least 12,000 types of PFAS chemicals.[31]

46.     While there are thousands of varieties of PFAS chemicals in existence, all PFAS contain carbon-fluorine bonds—one of the strongest in nature—which makes them highly persistent in the environment and in human bodies.[32]

47.     PFAS chemicals are sometimes called "forever chemicals."

48.     Humans can be exposed to PFAS through a variety of ways, including skin absorption.[33]

49.     PFAS chemicals have been associated with a variety of negative health effects for humans and the environment. The health risks associated with PFAS include, but are not limited to, decreased male and female fertility, negative developmental effects or delays in children, increased risk of cancers, liver damage, and thyroid disease, adverse impacts on the immune system, interference with hormones and increased cholesterol levels.[34]

50.     It is well documented that PFAS in personal care products may pose a risk to human health through direct and indirect exposure, as well as a risk to ecosystem health throughout the lifecycle of these products.[35]

51.     As skin is the body's largest organ,[36] subjecting it to absorption of PFAS through tampons is very concerning.

52.     A large number of studies have examined the potential harmful health effects of exposure to PFAS. In a 2019 study, the U.S. Department of Health and Human Services' National

---

[31] https://comptox.epa.gov/dashboard/chemical-lists/pfasmaster (last accessed Feb. 20, 2023).

[32] https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html (last accessed Feb. 20, 2023).

[33] *Id.*

[34] *See* https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last accessed February 20, 2023); https://www.atsdr.cdc.gov/pfas/health-effects/index.html (last accessed Feb. 20, 2023); https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html (last accessed Feb. 20, 2023).

[35] https://pubs.acs.org/doi/10.1021/acs.estlett.1c00240 (last accessed Feb. 21, 2023).

[36] https://doi.org/10.3109/17453054.2010.525439 (last accessed Feb. 20, 2023).

1   Toxicology Program found that PFAS has adverse effects on human organ systems, including

2   impacting the liver and thyroid hormone.[37]

3          53.    A figure from the European Environmental Agency ("EEA") shows the "[e]ffects of

4   PFAS on human health:"[38]



17          54.    The EEA has further explained that "[p]eople most at risk of adverse health impacts

18   are those exposed to high levels of PFAS, and vulnerable population groups such as children and the

19   elderly."[39]

20          55.    The Center for Disease Control's Agency for Toxic Substances and Disease Registry

21   has recognized that exposure to high levels of PFAS may also impact the immune system and reduce

22   antibody responses to vaccines.[40]

---

[37] https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html (last accessed Feb. 20, 2023).

[38] https://www.eea.europa.eu/publications/emerging-chemical-risks-in-europe (last accessed Feb. 21, 2023).

[39] *Id.*

[40] https://www.atsdr.cdc.gov/pfas/health-effects/index.html (last accessed Feb. 20, 2023).

1

2

3

56.     On September 20, 2020, a New York Times article titled "These Everyday Toxins May Be Hurting Pregnant Women and Their Babies" reported on the dangers of PFAS—particularly during gestation and in early childhood development:[41]

4

5

6

> Scientists think these widely used industrial chemicals may harm pregnant women and their developing babies by meddling with gene regulators and hormones that control two of the body's most critical functions: metabolism and immunity.

7

8

9

10

11

12

> More disturbing, PFAS can also alter levels of both mothers' and babies' thyroid hormones, which oversee brain development, growth and metabolism, and also play a role in immunity. Prenatal PFAS exposures that disrupt metabolism and immunity may cause immediate and lasting effects on both mother and child. Women exposed to PFAS during pregnancy have higher risks of gestational diabetes and pre-eclampsia, a type of high blood pressure. Their babies are more likely to undergo abnormal growth in utero, leading to low birth weight, and later face increased risk of childhood obesity and infections.

13

14

15

16

17

57.     Costs to society arising from PFAS exposure are high, with the annual health-related costs estimated to be EUR €52-84 billion across Europe in a recent study (Nordic Council of Ministers, 2019).[42] The study notes that these costs are likely underestimated, as only a limited range of health effects (high cholesterol, decreased immune system and cancer) linked to exposure to a few specific PFAS were included in the estimates.[43]

18

19

20

21

58.     There is no treatment to remove PFAS from the body. Due to its bioaccumulative nature, experts agree the most effective strategy to decrease risk is to avoid and/or limit exposure to products known to contain PFAS. As noted by the EPA: "Because certain PFAS are known to cause risks to human health, [one of] the most important steps you and your family can take to protect your

22

23

24

25

26

[41]   https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html   (last accessed Feb. 20, 2023).

27

[42] https://www.eea.europa.eu/publications/emerging-chemical-risks-in-europe (last accessed Feb. 21, 2023).

28

[43] *Id.*

1  health is to understand how to limit your exposure to PFAS by . . . taking [steps to] reduce possible
2  exposure during daily activities."[44]

3  59.  The exposure to toxic substances such as PFAS through period care products is
4  particularly serious due to the fact that studies have shown that the vaginal ecosystem is more
5  sensitive and absorbent than typical skin.[45]

6  60.  Further, "[r]esearch on vaginal drug delivery has shown that the vaginal canal offers a
7  suitable environment for chemical absorption and circulation. The canal is rich in arteries and
8  lymphatic vessels. And vaginal mucus is sticky, so it holds some molecules against the vaginal wall
9  for a long time; this forced proximity can stimulate absorption."[46]

10  61.  "The Madrid Statement," a scientific consensus regarding the persistence and potential
11  for harm of PFAS substances issued by the Green Science Policy Institute and signed by more than
12  250 scientists from 38 countries, recommended actions in order to mitigate future harm, including:
13  (1) discontinuing use of PFAS where not essential or safer alternatives exist; (2) labeling products
14  containing PFAS; and (3) encouraging retailers and individual consumers to avoid products
15  containing or manufactured using PFAS whenever possible.[47]

16  ***Plaintiff's Independent Testing Confirms the Presence of PFAS Chemicals in the Products***

17  62.  Plaintiff sought independent third-party testing to determine whether the Tampon
18  Products contain PFAS chemicals.

19  63.  Plaintiff's independent testing was conducted in accordance with accepted industry
20  standards for detecting whether the Tampon Products contain organic fluorine, which is a surrogate
21  for PFAS chemicals.

---

24  [44]  https://www.epa.gov/pfas/meaningful-and-achievable-steps-you-can-take-reduce-your-risk  (last
25  accessed Feb. 20, 2023).

26  [45] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3948026// (last accessed Feb. 21, 2023).
   [46]  https://undark.org/2022/11/15/in-turmoil-over-tampons-scientists-see-a-need-for-more-scrutiny/
27  (last accessed Feb. 20, 2023).

28  [47] https://greensciencepolicy.org/our-work/science-policy/madrid-statement/ (last accessed Feb. 20,
   2023).

64.     There are more than 12,000 PFAS chemicals currently in existence.[48] Accordingly, it is impractical, if not impossible, for scientists and researchers to test for the presence of each of these 12,000 chemicals in any particular sample.

65.     The presence of organic fluorine in a sample, however, indicates the sample contains PFAS, and is therefore a widely accepted method of determining whether a sample contains PFAS.

66.     Here, Plaintiff's testing detected the presence of organic fluorine in the Tampon Products.

***Defendant's Unlawful Conduct***

67.     Edgewell is well aware of consumers' desire to avoid potentially harmful chemicals,[49] which is exactly why it has engaged in an aggressive, uniform marketing campaign intended to convince consumers that the Tampon Products are an Organic alternative to traditional menstrual products that are free from potentially harmful ingredients like PFAS.

68.     Edgewell has engaged in this uniform marketing campaign in an effort to convince reasonable consumers to believe that the Tampon Products are superior to other tampons or menstrual products that do not have the same purported Organic or chemical-free health benefits.

69.     Reasonable consumers purchasing the Tampon Products would believe, based on Edgewell's representations, that the Tampon Products do not contain artificial, synthetic or man-made chemicals that could adversely impact their health.

70.     At all times relevant to this action, Defendant knew, or at minimum should have known, that its Tampon Products contain PFAS.

71.     Throughout the class period, Defendant has targeted health-conscious consumers by falsely and misleadingly representing its Tampon Products with the Organic Representations, and consequently, reasonable consumers believe the Tampon Products are free from harmful chemicals such as PFAS.

---

[48] https://comptox.epa.gov/dashboard/chemical-lists/pfasmaster (last accessed Feb. 15, 2023).

[49]     https://www.ob-tampons.com/faq/about-ob-tampons#:~:text=o.b.%C2%AE%20tampon%3F-,Who%20invented%20the%20o.b.%C2%AE%20tampon%3F,most%20importantly)%20provided%20great%20protection (last accessed Feb. 21, 2023).

72.     Defendant is well-aware that consumers are increasingly demanding menstrual products that are free from ingredients that may be harmful to their health and environment— specifically, harmful chemicals. In its own words, "To this day, the o.b.® brand continues to retain a board-certified gynecologist and research teams to pursue Esser's vision for creating safe, effective, and innovative options for women."[50] Edgewell goes further to specifically address "WHAT WE'RE MADE OF," identifies that the Tampon Products "are made of two types of rayon and a polyester string," and that the Tampon Products "are responsibly sourced" and "only what you need, nothing you don't."[51]

73.     Over the course of nearly seventy years, o.b. has cultivated a trustworthy brand image pertaining specifically to eco-friendly feminine hygiene products.[52]

74.     Defendant's wellness-focused business strategy is supported by current market research, which has shown an increased demand for more sustainable and environmentally friendly menstrual products, as well as those that do not contain potentially harmful chemicals.[53]

75.     Defendant's strategy to stay aligned with consumer preferences in order to retain a competitive advantage in the marketplace, which includes representing to sell Organic tampons which do not contain ingredients that are suspected to cause harm to human health and the environment, would inevitably be negatively impacted if it disclosed the presence of PFAS in its Tampon Products.

76.     Further, Defendant's claims touting its Tampon Product as Organic, and other representations and omissions as described herein, further contribute to the reasonable consumer perception and belief that the Tampon Products contain only ingredients that are good for humans and the environment, and that they are free of man-made chemicals indisputably linked to negative health effects.

---

[50] *Id.*

[51] *Id.*

[52] https://www.romper.com/p/ob-organic-tampons-are-here-that-plant-based-applicator-is-one-you-can-really-feel-good-about-using-17043501 (last accessed Feb. 21, 2023).

[53] https://www.factmr.com/report/415/feminine-hygiene-products-market (last accessed Feb. 14, 2023).

77.     Consumers lack the expertise to ascertain the true ingredients in the Tampon Products prior to purchase. Accordingly, reasonable consumers must, and do, rely on Defendant to accurately and honestly advertise its Tampon Products' ingredients and benefits. Further, consumers rely on Defendant to not contradict those representations by using artificial man-made chemicals in its Tampon Products that are known to pose a risk to human health. Such misrepresentations are material to reasonable consumers' purchasing decisions.

78.     Defendant's representations that the Tampon Products are healthy for humans and the environment, including *inter alia*, the representations described herein, are false because products containing toxic, man-made ingredients like PFAS are neither good for consumers nor the environment.

79.     Defendant's representations are likely to mislead reasonable consumers, and indeed did mislead Plaintiff and Class members, regarding the presence of PFAS chemicals in its Tampon Products. Accordingly, these acts and practices by Defendant are deceptive.

80.     Consumers reasonably relied on Defendant's false statements and misleading representations, and reasonably expected that Defendant's Tampon Products would conform with its representations and, as such, would not contain artificial, man-made PFAS chemicals.

81.     Defendant's false statements, misleading representations and material omissions are intentional, or otherwise entirely careless, and render its Tampon Products worthless or less valuable.

82.     If Defendant had disclosed to Plaintiff and Class Members that its Tampon Products contained PFAS chemicals, Plaintiff and Class Members would not have purchased Defendant's Tampon Products, or they would have paid less for them.

83.     Plaintiff and Class Members were among the intended recipients of Defendant's deceptive representations and omissions described herein.

84.     Defendant's representations and omissions, as described herein, are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

85.     The materiality of the representations and omissions described herein also establishes causation between Defendant's conduct and the injuries Plaintiff and Class Members sustained.

86. Defendant is aware that the consumers are concerned about the use of PFAS in its Tampon Products, yet it has continued to market and advertise its Tampon Products using the Organic Representations and other representations described herein in order to profit off of unsuspecting consumers, including Plaintiff and Class Members.

87. The presence of PFAS chemicals in Defendant's Tampon Products is entirely inconsistent with its uniform representations.

88. Defendant's knowingly false and misleading representations have the intended result of convincing reasonable consumers that its Tampon Products are "organic" and therefore do not contain artificial, man-made, toxic chemicals. No reasonable consumer would consider Defendant's Tampon Products "organic," or good for people and the environment, if she knew that the Tampon Products contained harmful, artificial PFAS chemicals.

89. Defendant's false, misleading, and deceptive representations, as described herein, are likely to continue to deceive and mislead reasonable consumers and the general public. Indeed, they have already deceived and misled Plaintiff and Class Members.

90. In making the false, misleading, and deceptive representations, Defendant knew and intended consumers would pay a premium for the Tampon Products over comparable products that are made from or contain synthetic or artificial chemical ingredients that are known to be harmful to humans and the environment.

91. Plaintiff and Class Members all paid money for the Tampon Products, however, they did not obtain the full value of the advertised Tampon Products due to Defendant's misrepresentations as detailed herein. Plaintiff and Class Members purchased, purchased more of, or paid more for, the Tampon Products than they would have had they known the truth about the Tampon Products' artificial, man-made, and harmful ingredients. Thus, Plaintiff and Class Members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

92. Defendant's widespread marketing campaign portraying the Tampon Products as containing Organic ingredients as detailed herein, is misleading and deceptive to consumers because the Tampon Products are made with artificial, man-made, and toxic ingredients. Plaintiff brings this action on behalf of the proposed Classes to stop Defendant's misleading practices.

**PLAINTIFF'S FACTS**

93.     Plaintiff Brigette Lowe has purchased o.b. tampons for nearly three decades.  When the Tampon Products were released, she began to purchase them and did so most recently June of 2022, from a Walmart near her home at the time in Vallejo, California.

94.     At the time she purchased the Tampon Products, Plaintiff was specifically seeking out chemical-free personal care products, including chemical-free feminine hygiene products.

95.     Prior to her purchase, Plaintiff reviewed the Tampon Products' labeling, packaging, and marketing materials, including the Organic Representations on the Tampon Products' label and packaging.

96.     Plaintiff reasonably understood Defendant's Organic Representations to mean that the Tampon Products would not contain harmful chemicals, especially chemicals that could pose a risk to her health and the environment, like PFAS.

97.     Plaintiff relied on these representations when purchasing the Tampon Products, and these representations were part of the basis of the bargain in that she would not have purchased the Tampon Products, or would not have purchased them on the same terms, if the true facts had been known.

98.     Plaintiff continues to seek out menstrual products that are free from harmful chemicals like PFAS, and she would like to purchase Defendant's products in the future if they conform with Defendant's representations about the Tampon Products. However, Plaintiff is currently unable to rely on Defendant's representations regarding the Tampon Products in deciding whether to purchase them in the future. Plaintiff understands that the composition of the Tampon Products may change over time, but as long as Defendant may freely advertise the Tampon Products as Organic when it contains PFAS, Plaintiff will be unable to make informed decisions about whether to purchase Defendant's Tampon Products and will be unable to evaluate the different prices between the Tampon Products and competitor's products, which *are* in fact free from harmful chemicals like PFAS.

99.     As a direct and proximate result of Defendant's acts, including its affirmative misrepresentations, false statements and material omissions, Plaintiff has incurred economic injuries including financial damages at the point-of-sale stemming from her purchase of and/or overpayment

1   for the Tampon Products, in addition to the loss of the benefit of her bargain and the Tampon

2   Products' intended benefits.

3          **INJURY TO THE PUBLIC-AT-LARGE AND POTENTIAL FOR FUTURE HARM**

4         100.   Defendant's wrongful conduct harms the public-at-large.

5         101.   PFAS chemicals, also known as "forever chemicals," are a category of highly

6   persistent and toxic man-made chemicals that have been associated with numerous negative health

7   effects for humans.

8         102.   PFAS chemicals are known to negatively impact the human body, including, but not

9   limited to, decreased fertility, developmental effects or delays in children, increased risk of cancers,

10   liver damage, increased risk of asthma and thyroid disease, adverse impacts on the immune system,

11   interference with hormones and increased cholesterol levels.

12         103.   PFAS chemicals are further known to negatively impact the environment.

13         104.   Because Defendant's deceptive advertising is ongoing and directed to the public, and

14   because Defendant continues to sell the Tampon Products containing PFAS chemicals, the deception

15   poses an ongoing risk to the public.

16         105.   As such, a public injunction must be provided in order to enjoin Defendant's continued

17   harm of consumers and the public-at-large.

18         **TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

19         106.   Defendant had actual knowledge, or should have had actual knowledge, that the

20   Tampon Products contained artificial, man-made PFAS chemicals which pose a risk of harm to human

21   health and the environment.

22         107.   Although Defendant was aware of the deception in its advertising, marketing,

23   packaging, and sale of the Tampon Products given the inclusion of PFAS chemicals, it took no steps

24   to disclose to Plaintiff or Class Members that the Tampon Products contained PFAS chemicals.

25         108.   Despite its knowledge, Defendant has fraudulently misrepresented the Tampon

26   Products as having qualities and characteristics they do not, while concealing the fact that the Tampon

27   Products contain PFAS chemicals.

28

109.    Defendant has made, and continues to make, affirmative false statements and misrepresentations to consumers, and continues to omit the fact that the Products contain PFAS, to promote sales of the Tampon Products.

110.    Defendant has misrepresented, concealed, and otherwise omitted material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Tampon Products. Defendant's misrepresentations and omissions were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members. Accordingly, Plaintiff and Class Members reasonably relied upon Defendant's misrepresentations and concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

111.    The PFAS chemicals in the design and/or manufacture of Defendant's Tampon Products were not reasonably detectible to Plaintiff and Class Members.

112.    At all times, Defendant actively and intentionally misrepresented the qualities and characteristics of the Tampon Products, while concealing the existence of the PFAS chemicals and failing to inform Plaintiff or Class Members of the existence of the PFAS chemicals in the Tampon Products. Accordingly, Plaintiff's and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

113.    Defendant's statements, words, and acts were made for the purpose of deceiving the public, and suppressing the truth that the Tampon Products contained artificial, man-made PFAS chemicals.

114.    Defendant misrepresented the Tampon Products and concealed the PFAS chemicals for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

115.    As a result of Defendant's intentional misrepresentations and active concealment of the PFAS chemicals and/or failure to inform Plaintiff and Class Members of the PFAS chemicals, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendant is estopped from relying on any statutes of limitations in light of its intentional misrepresentations and active concealment of the inclusion of artificial, man-made PFAS chemicals in the Tampon Products.

116.    Further, the causes of action alleged herein did not occur until Plaintiff and Class Members discovered that the Tampon Products contained PFAS chemicals. Plaintiff and Class Members had no realistic ability to discern that the Tampon Products contained PFAS chemicals until they learned of the existence of the PFAS chemicals. In either event, Plaintiff and Class Members were hampered in their ability to discover their causes of action because of Defendant's active concealment of the existence and true nature of the Tampon Products.

**FEDERAL RULE OF CIVIL PROCEDURE 9(b) ALLEGATIONS**

117.    Although Defendant is in the best position to know what content it placed on its packaging, website(s), and other marketing and advertising during the relevant timeframe, and the knowledge that it had regarding the PFAS chemicals and its failure to disclose the existence of PFAS chemicals in the Tampon Products to Plaintiff and consumers, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

118.    **WHO**: Defendant made its Organic Representations on the Tampon Products' packaging, online, and in its marketing and advertising of the Tampon Products.

119.    **WHAT**: Defendant's conduct here was, and continues to be, deceptive and fraudulent because of its Organic Representations. Thus, Defendant's conduct deceived Plaintiff and Class Members into believing that the Tampon Products were manufactured and sold with the represented qualities. Defendant knew or should have known this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet it continued to pervasively market the Tampon Products as possessing qualities they do not have.

120.    **WHEN**: Defendant made material misrepresentations, false statements and/or material omissions during the Class periods and at the time Plaintiff and Class Members purchased the Tampon Products, prior to and at the time Plaintiff and Class Members made claims after realizing the Tampon Products contained harmful, man-made chemicals, and continuously throughout the applicable Class periods.

121.    **WHERE**: Defendant's marketing message was uniform and pervasive, carried through false statements, misrepresentations, and/or omissions on the Tampon Products' packaging.

122.   **HOW**: Defendant made false statements, misrepresentations and/or material omissions regarding the presence of PFAS chemicals in the Tampon Products.

123.   **WHY**: Defendant made the false statements, misrepresentations and/or material omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Tampon Products over other brands that did not make similar Organic Representations, the effect of which was that Defendant profited by selling the Tampon Products to many thousands of consumers.

124.   **INJURY**: Plaintiff and Class Members purchased, paid a premium, or otherwise paid more for the Tampon Products when they otherwise would not have, absent Defendant's misrepresentations, false and misleading statements.

## CLASS ACTION ALLEGATIONS

125.   Plaintiff brings this action individually and as a representative of all of those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and the members of the following proposed nationwide class ("Nationwide Class"):

> **During the fullest period allowed by law, all persons who purchased the Tampon Products in the United States within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.**

126.   Plaintiff brings this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and the members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):

> **During the fullest period allowed by law, all persons who purchased the Tampon Products in the States of California, Florida, Illinois, New York, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, and Washington[54] within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.**

---

[54] Plaintiff seeks to certify a Multi-State Consumer Protection Class consisting of persons in the following states (and implicating the following statutes): California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); Florida (Fla. Stat. §§ 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §§ 445.901, *et*

127.     Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and the members of the following class ("California Class"):

> **During the fullest period allowed by law, all persons who purchased the Tampon Products in the State of California within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.**

128.     The Nationwide Class, Multi-State Consumer Protection Class, and California Class are referred to collectively as the "Class" or "Classes," and the members of the Classes are referred to as the "Class Members." Specifically excluded from the Classes are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiff reserves the right to amend the Class definitions as necessary.

129.     <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, given the wide distribution of the Tampon Products, it is voluminous and nationwide. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendant and its authorized retailers.

130.     <u>Typicality</u>: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased the Tampon Products containing PFAS that were designed, manufactured, marketed, advertised, distributed, and sold by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, she has incurred or will continue to incur damage as a result of overpaying for the Tampon Products containing chemicals which makes the Tampon Products not what reasonable consumers were intending to purchase.

---

*seq.*); Minnesota (Minn. Stat. §§ 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*); New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, *et seq.*); and Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*).

Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

131.   <u>Commonality</u>: Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

(a)   Whether Defendant misrepresented that the Tampon Product is free from harmful ingredients;

(b)   Whether Defendant's practices in marketing, advertising and packaging the Tampon Products tend to mislead reasonable consumers into believing that the Tampon Products are free from harmful chemicals, such as PFAS;

(c)   Whether Defendant engaged in false or misleading advertising;

(d)   Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the Tampon Products with the Pure and Organic Representations and other misrepresentations and omissions as described herein;

(e)   Whether Defendant violated Cal. Bus. & Prof. Code §§ 17500, *et seq.* (FAL);

(f)   Whether Defendant violated Civil Code §§ 1750, *et seq.* (CLRA);

(g)   Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL);

(h)   Whether Defendant engaged in deceptive trade practices by selling, packaging, advertising and/or marketing the Tampon Products containing PFAS chemicals;

(i)   Whether Defendant engaged in false or misleading advertising by selling, packaging, and/or marketing the Tampon Products containing PFAS chemicals;

(j)   Whether Plaintiff and Class Members either paid a premium for the Tampon Products that they would not have paid but for Defendant's false representations or would not have purchased them at all;

(k)   Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(l)   Whether Plaintiff and Class Members have suffered an economic injury and the proper measure of their losses as a result of those injuries; and

(m)   Whether Plaintiff and Class Members are entitled to injunctive, declaratory, or other equitable relief.

132.   <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. She has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer product, misrepresentation, and mislabeling class actions, and Plaintiff intends to prosecute this action vigorously.

133.   <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Plaintiff and Class Members will continue to be deceived by Defendant's misrepresentations and omissions and unknowingly be exposed to the risk of harm associated with the PFAS chemicals in the Tampon Products. Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

134.   <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

135.   Plaintiff knows of no difficulty to be encountered in the maintenance of this  Action that would preclude its maintenance as a class action.

136.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## COUNT ONE
### Violation of State Consumer Protection Statutes
### (On Behalf of Plaintiff and the Multi-State Consumer Protection Class)

137.    Plaintiff, individually and on behalf of the Multi-State Consumer Protection Class, repeats and re-alleges all previous paragraphs as if fully included herein.

138.    Plaintiff and Multi-State Consumer Protection Class Members have been injured as a result of Defendant's violations of the state consumer protection statutes listed above, which also provide a basis for redress to Plaintiff and Multi-State Consumer Protection Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

139.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

140.    Defendant violated the Multi-State Consumer Protection Class states' unfair and deceptive acts and practices laws by representing the Products using the Organic Representations and other misrepresentations and omissions detailed herein, when, in reality, they contain unnatural, human-made PFAS chemicals known to be harmful to humans and the environment.

141.    Defendant's misrepresentations were material to Plaintiff's and Multi-State Consumer Protection Class Members' decision to purchase the Tampon Products or pay a premium for the Tampon Products.

142.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

143.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Protection Class Members purchased and paid for Tampon Products that did not conform to Defendant's Tampon Product promotion, marketing, advertising, packaging, and labeling, and they were deprived of the benefit of their bargain and spent

1  money on Tampon Products that did not have any value or had less value than warranted or Tampon

2  Products that they would not have purchased and used had they known the true facts about them

3       144.  As a result of Defendant's violations, Defendant has been unjustly enriched.

4       145.  Pursuant to the aforementioned States' unfair and deceptive practices laws, Plaintiff

5  and Multi-State Consumer Protection Class Members are entitled to recover compensatory damages,

6  restitution, punitive and special damages including but not limited to treble damages, reasonable

7  attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted

8  pursuant to the relevant law.

**COUNT TWO**
**Violation of the California Consumer Legal Remedies Act**
**("CLRA"), Civil Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

12       146.  Plaintiff, individually and on behalf of the California Class, repeats and re-alleges all

13  previous paragraphs as if fully included herein.

14       147.  The conduct described herein took place in the State of California and constitutes

15  unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal

16  Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*

17       148.  The CLRA applies to all claims of all California Class Members because the conduct

18  which constitutes violations of the CLRA by Defendant occurred within the State of California.

19       149.  Plaintiff and California Class Members are "consumers" as defined by Civil Code §

20  1761(d).

21       150.  Defendant is a "person" as defined by Civil Code § 1761(c).

22       151.  The Tampon Products qualify as "goods" as defined by Civil Code § 1761(a).

23       152.  Plaintiff and the California Class Members' purchases of Tampon Products are

24  "transactions" as defined by Civil Code § 1761(e).

25       153.  As set forth below, the CLRA deems the following unfair methods of competition and

26  unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or

27  which does result in the sale or lease of goods or services to any consumer as unlawful.

28

a. "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Civil Code § 1770(a)(5);

b. "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7);

c. "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9); and

d. "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Civil Code § 1770(a)(16).

154.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5), (a)(7), (a)(9), and (a)(16) when it represented, through its advertising and other express representations, that the Tampon Products had benefits or characteristics that they did not actually have.

155.   As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding Tampon Products benefits or characteristics that they did not in fact have, and represented the Tampon Products to be of a quality that was not true. Indeed, Defendant concealed this information from Plaintiff and California Class Members.

156.   The Tampon Products are not Organic and are of an inferior quality and trustworthiness compared to other products in the industry. As detailed above, Defendant further violated the CLRA when it falsely represented that the Tampon Products meet a certain standard or quality.

157.   As detailed above, Defendant violated the CLRA when it advertised the Tampon Products with the intent not to sell Tampon Products as advertised and knew that the Tampon Products were not as represented.

158.   Specifically, Defendant marketed and represented the Tampon Products with the Organic Representations, when in fact no reasonable consumer would believe the products to be Organic if they knew they contained a potentially harmful chemical such as PFAS.

159.    Defendant's deceptive practices were specifically designed to induce Plaintiff and California Class Members to purchase or otherwise acquire the Tampon Products.

160.    Defendant engaged in uniform marketing efforts to reach California Class Members, their agents, and/or third parties upon whom they relied, to persuade them to purchase and use the Tampon Products manufactured by Defendant. Defendant's packaging, advertising, marketing, website and retailer product identification and specifications, contain numerous false and misleading statements regarding the quality, safety, and reliability of the Tampon Products.

161.    Despite these Organic representations, Defendant also omitted and concealed information and material facts from Plaintiff and California Class Members.

162.    In their purchase of Tampon Products, Plaintiff and California Class Members relied on Defendant's representations and omissions of material facts.

163.    These business practices are misleading and/or likely to mislead consumers and should be enjoined.

164.    Pursuant to Cal. Civ. Code § 1782, Plaintiff Lowe notified Defendant in writing by certified mail sent on February 10, 2023, of its violations of § 1770 described above and demanded that it correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to do so. If Defendant does not agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice, Plaintiff will amend this Complaint to seek actual, punitive, and statutory damages, as appropriate.

165.    A declaration stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(d) is attached hereto as Exhibit A.

166.    In accordance with Civil Code § 1780(a), Plaintiff and the other California Class Members seek injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from continuing its deceptive advertising and sales practices.

**COUNT THREE**
**Violations of the California Unfair Competition Law**
**("UCL"), California Business and Professions Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

167.   Plaintiff, individually and on behalf of the California Class, repeats and re-alleges all previous paragraphs as if fully included herein.

168.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

169.   Plaintiff and Class Members who purchased Defendant's Tampon Products suffered an injury by virtue of buying products in which Defendant misrepresented and/or omitted the Tampon Products' true quality, reliability, safety, and use. Had Plaintiff and Class Members known that Defendant materially misrepresented the Tampon Products and/or omitted material information regarding its Tampon Products, they would not have purchased the Tampon Products.

170.   Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this complaint.

171.   There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise its Tampon Products.

172.   Plaintiff and Class Members who purchased Defendant's Products had no way of reasonably knowing that the Tampon Products were deceptively packaged, marketed, advertised, and labeled, were not safe, and were unsuitable for their intended use. Thus, Plaintiff and California Class Members could not have reasonably avoided the harm they suffered.

173.   Specifically, Defendant marketed, labeled, and represented the Tampon Products with the Organic Representations, when in fact the Tampon Products contain PFAS, which no reasonable consumer would believe was in products with the Organic Representations.

174.   The gravity of the harm suffered by Plaintiff and Class Members who purchased Defendant's Tampon Products outweighs any legitimate justification, motive or reason for packaging, marketing, advertising, and labeling the Tampon Products in a deceptive and misleading manner. Accordingly, Defendant's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiff and California Class Members.

175.    The above acts of Defendant in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiff and Class Members, were and are likely to deceive reasonable consumers by obfuscating the true nature of Defendant's Tampon Products, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

176.    As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff, on behalf of herself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

**COUNT FOUR**
**Violation of the California False Advertising Law**
**("FAL") California Business and Professions Code §§ 17500, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

177.    Plaintiff, individually and on behalf of the California Class, repeats and re-alleges all previous paragraphs as if fully included herein.

178.    The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

179.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

180.    Specifically, Defendant marketed, labeled, and represented the Tampon Products with the Organic Representations, when in fact the Tampon Products contain PFAS, which no reasonable consumer would believe was in products with the Organic Representations.

181.    At the time of its misrepresentations, Defendant was either aware that Tampon Products contained PFAS, which no reasonable consumer would expect would be in products with the Pure and Organic Representations or was aware that it lacked the information and/or knowledge

1  required to make such a representation truthfully. Defendant concealed and omitted and failed to

2  disclose this information to Plaintiff and California Class Members.

3       182.    Defendant's descriptions of the Tampon Products were false, misleading, and likely

4  to deceive Plaintiff and other reasonable consumers.

5       183.    Defendant's conduct therefore constitutes deceptive or misleading advertising.

6       184.    Plaintiff has standing to pursue claims under the FAL as they reviewed and relied on

7  Defendant's packaging, advertising, representations, and marketing materials regarding the Tampon

8  Products when selecting and purchasing the Tampon Products.

9       185.    In reliance on the statements made in Defendant's advertising and marketing materials

10  and Defendant's omissions and concealment of material facts regarding the quality and use of the

11  Tampon Products Plaintiff and California Class Members purchased the Tampon Products.

12      186.    Had Defendant disclosed the true nature of the Tampon Products (that they contain

13  PFAS), Plaintiff and the California Class Members would not have purchased Tampon Products or

14  would have paid substantially less for them.

15      187.    As a direct and proximate result of Defendant's actions, as set forth herein, Defendant

16  has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and

17  California Class Members who paid for the Tampon Products, which contained chemicals and were

18  not organic.

19      188.    Plaintiff and California Class Members seek injunctive relief, restitution, and

20  disgorgement of any monies wrongfully acquired or retained by Defendant and by means of its

21  deceptive or misleading representations, including monies already obtained from Plaintiff and

22  California Class Members as provided for by the California Business and Professions Code § 17500.

23                              **COUNT FIVE**
                      **Unjust Enrichment/Quasi-Contract**
24  **(On Behalf of Plaintiff and the Nationwide Class, or, in the Alternative, the California Class)**

25      189.    Plaintiff, individually and on behalf of the Nationwide Class or, in the alternative, the

26  California Class, repeats and re-alleges all previous paragraphs as if fully included herein.

27      190.    Defendant's unfair and unlawful contract includes, among other things, making false

28  and misleading representations and omissions of material fact, as set forth in this Complaint.

Defendant's acts and business practices offend the established public policy of California, as there is no societal benefit from false advertising, only harm. While Plaintiff and Class Members were harmed at the time of purchase, Defendant was unjustly enriched by its misrepresentations and omissions.

191.    Plaintiff and Class Members were harmed when purchasing Defendant's Tampon Products as a result of Defendant's material representations and omissions, as described in this Complaint. Plaintiff and each Class Member purchased the Tampon Products. Plaintiff and Class Members have suffered injury in fact and lost money as a result of paying the price they paid for the Tampon Products as a result of Defendant's unlawful, unfair, and fraudulent business practices.

192.    Defendant's conduct allows Defendant to knowingly realize substantial revenues from selling the Tampon Products at the expense of, and to the detriment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

193.    Plaintiff and Class Members confer significant financial benefits and pay substantial compensation to Defendant for the Tampon Products, which are not as Defendant represents them to be.

194.    Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

195.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a.    Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.    Name Plaintiff as Class Representatives and Plaintiff's attorneys as Class Counsel;

c.    Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Classes in an amount to be determined at trial;

d.   Grant restitution to Plaintiff and the Classes and require Defendant to disgorge its ill-gotten gains;

e.   Permanently enjoin Defendant from engaging in the wrongful and unlawful conduct alleged herein;

f.   Award Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

g.   Award Plaintiff and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

h.   Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

DATED: February 24, 2023.                    Respectfully submitted,

_/s/ Michael H. Pearson_____
Michael H. Pearson, CA SBN 277857
**PEARSON WARSHAW, LLP**
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
mpearson@pwfirm.com

Melissa S. Weiner*
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com

Rachel Soffin*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
rsoffin@milberg.com

Harper T. Segui*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
hsegui@milberg.com

Erin J. Ruben*
Thomas A. Pacheco*
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLP**
900 W. Morgan Street
Raleigh, NC 27603
P.O. Box 12638
Raleigh, NC 27605
eruben@milberg.com
tpacheco@milberg.com

***Attorneys for Plaintiff and the Classes***

*Pro Hac Vice Forthcoming*

CLASS ACTION COMPLAINT